UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NICHOLAS HEBERT | * | CIVIL ACTION NO. 22-4487 |
| | * | |
| VERSUS | * | SECTION: "A" (5) |
| | * | |
| QBE SPECIALTY INSURANCE | * | JUDGE JAY C. ZAINEY |
| COMPANY | * | |
| | * | MAGISTRATE JUDGE MICHAEL B. |
| | * | NORTH |
| | * | |

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

## ORDER AND REASONS

The following motions are before the Court: **Motion for Partial Summary Judgment (Rec. Doc. 22)** filed by Defendant, QBE Specialty Insurance Company, and **Motion for Leave to File Jury Demand (Rec. Doc. 27)**, filed by Plaintiff, Nicholas Hebert. Both motions are opposed. The motions, submitted for consideration on June 5, 2024, and June 26, 2024, respectively, are before the Court on the briefs without oral argument. For the reasons that follow, the motions are both **DENIED**.

### I.     Background

Hebert owns property in Houma, Louisiana, which was damaged in August of 2021 when Hurricane Ida struck Louisiana. (Petition for Damages, Rec. Doc. 1-1, ¶¶ 3-4). He asserts that his property suffered significant damage, including to the roof, ceiling, walls, floors, exterior, and other structures on the premises, by water intrusion and other means. (*Id.* ¶ 5). At all relevant times, the property was insured by QBE Specialty Insurance Company ("QBE") and was subject to Policy No. QSN3702103. (Statement of Material Facts, Rec. Doc. 25-2, at 1). The policy covered the dwelling up to $528,000, other structures up to $30,000, contents up to $150,000, and loss of use up to $30,000. (Rec. Doc. 22-5, at 5; *see also* Statement of Material Facts, Rec. Doc. 25-2, at 1). Immediately following the storm, Hebert filed a claim with QBE. (Deposition of Nicholas Hebert,

1

Rec. Doc. 25-4, at 25:12-15). The claim was opened that day. (Rec. Doc. 25-22). Soon thereafter,

QBE sent an adjuster, RYZE, which wrote an estimate for $5,685 for the dwelling and for an

amount exceeding the policy limits of $30,000 under the "Other Structures" coverage; QBE

ultimately issued a check for $5,021 for Coverage A (Dwelling) and $30,000 for Coverage B

(Other Structures), and closed the claim. (Deposition of Nicholas Hebert, at 29:15-30:21). Hebert

disputed the disbursement, stating that he would seek a second opinion due to the severity of

damages. (Rec. Doc. 25-15).

Subsequently, Hebert hired Accord Services, a public insurance adjusting firm.

(Deposition of Nicholas Hebert, at 25:16-26:14). Accord's initial estimate showed approximate

dwelling losses of $123,000 pre-depreciation. (Rec. Doc. 25-9, at 51). Accord sent RYZE a copy

of the loss and estimate on December 22, 2021. (Rec. Doc. 25-11). Hebert contends that no

payment was provided within thirty days of this proof of loss. (*See* Rec. Doc. 22-7 (no check issued

for this claim within thirty days of December 22, 2021)). For its part, QBE asserts that it did not

receive this proof of loss. (*See* Rec. Doc. 22-1, at 2-3 (laying out timeline with no proof of loss

arriving in December); Declaration of Daniel Donohue, Rec. Doc. 22-6, at 2 (no loss reported

between September and February)). Over the course of the next month, Hebert submitted some

supplemental claims, which were paid, (Statement of Material Facts, Rec. Doc. 25-2, at 5), but no

payment was issued for the December submission of proof of loss. Ultimately, Accord contacted

RYZE to notify it that thirty days had passed. (Rec. Doc. 25-10, at 2 (noting that thirty days had

passed without response)). On February 1, 2022, Accord re-submitted its estimate. (Rec. Doc. 25-

12). QBE asserts that it did not receive this proof of loss until February 18, 2022. (Declaration of

Daniel Donohue, at 2). RYZE then inspected the property and issued a new pre-depreciation estimate under Coverage A of $83,299. (Rec. Doc. 25-19, at 15).[1]

Following receipt of RYZE's April estimate, QBE issued a payment of $63,532.72 on May 2, 2022. (Declaration of Daniel Donohue, at 2). In response, Accord sent another statement of loss totaling $159,684.56 for Coverage A damages. (*Id.*). QBE rejected this submission but assigned a building consultant to perform an inspection in June of 2022. (*Id.*). QBE did not issue payment for the final Accord estimate, but did pay an additional $33,252.82 after receiving the June estimate. (*Id.* at 2-3). After this series of events, Hebert filed suit in the 32nd Judicial District Court for the Parish of Terrebonne, asserting claims for breach of contract and penalties for QBE's conduct under La. R.S. §§ 22:1892 and 22:1973. (Rec. Doc. 1-1). QBE removed the case to this Court on the basis that diversity of citizenship jurisdiction exists.

QBE now moves for partial summary judgment, arguing that penalties under La. R.S. §§ 22:1892 and 22:1973 are improper because (1) it is undisputed that QBE issued payments of all undisputed damages within thirty days of receipt of the claims or, (2) in the alternative, any refusal to issue payment was based on a genuine dispute of coverage or amount of loss. QBE further argues that it has fully satisfied its obligation under Coverage B (Other Structures) and that Hebert did not incur Coverage D damages (Additional Living Expenses) and that it therefore is entitled to summary judgment as to any claims under those coverages. In response, Hebert asserts that QBE failed to issue payments within the statutory periods after receiving proof of loss and that it was arbitrary, capricious, or without probable cause in doing so. On this basis, he argues

---

[1] The Court notes that there is a discrepancy between the value of the estimate provided by RYZE as reported by each party. Rec. Doc. 25-19, provided by Hebert, shows a pre-depreciation estimate of $83,299. The Declaration of Daniel Donohue, provided by QBE, states that the re-inspection occurred on April 8, 2024 (rather than April 17, 2024, as noted on the estimate itself), and that the new estimate was $79,114. (Declaration of Daniel Donohue, at 2). The Statement of Material Facts notes this discrepancy. (*See* Statement of Material Facts, Rec. Doc. 25-2, at 7-8).

that the motion should be denied. He further contends that because he is not seeking damages under either Coverage B or Coverage D, the motion should be dismissed as moot as to these two claims. The Court takes up these arguments below.

**II.      Legal Standard**

Summary judgment is proper where there is "no genuine dispute of material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). That is, it is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th

Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

**III.  Discussion**

*1.  La. R.S. §§ 22:1892 and 22:1973*

QBE first requests summary judgment as to the causes of action stated under La. R.S. §§ 22:1892 and 22:1973, which provide for penalties against insurers in specific circumstances. La. R.S. § 1892 states that, where an insurer receives satisfactory proof of loss of a claim and does not issue a payment for that loss within thirty days, it is subject to a penalty if such failure is arbitrary, capricious, or without probable cause. Similarly, La. R.S. § 22:1973 subjects an insurer to penalties where it fails "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." La. R.S. § 22:1973(5). It also states that it is a breach of duty for the insurer to fail to pay a claim pursuant to section 22:1893 when such failure is arbitrary, capricious, or without probable cause. *Id.* § 22:1973(6). The first element—satisfactory proof of loss—is satisfied easily.[2] The third element—that the failure to pay be arbitrary, capricious, or without probable cause—is more difficult to establish, and has been defined by the Louisiana Supreme Court to mean "vexatious," or "unjustified, without reasonable or probable cause or excuse." *Reed v. State Farm Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 10/21/03). Additionally, as a general matter, "[a]n insurer need not pay a disputed amount in a claim for which there are *substantial, reasonable and legitimate questions as to the extent of the insurer's liability or of the*

---

[2] Satisfactory proof of loss "is only that which is sufficient to fully apprise the insurer of the insured's claims." *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1119 (La. 12/2/08). Further, the form of proof of loss is "a flexible requirement to advise an insurer of the facts of the claim. As long as the insurer receives sufficient information to act on the claim, the manner in which it obtains the information is immaterial." *Id.*

*insured's loss*. However, an insurer must pay any undisputed amount over which reasonable minds

could not differ." *Brown v. State Farm Mut. Auto. Ins. Co.*, 93 So. 3d 697, 702 (La. App. 2 Cir.

5/23/12) (emphasis added) (citing *La. Bag Co., Inc.*, 999 So. 2d 1104). Therefore, for summary

judgment to be granted, one of the following must be true: (1) there is no question of fact as to the

timeliness of QBE's payments, or (2) if QBE possibly exceeded the statutory time limits, such

failure to issue timely payments was reasonable as a matter of law.

Here, an issue of material fact exists as to whether QBE issued some payments within the

statutory time limit. Hebert has provided evidence—including copies of the original

correspondence—suggesting that supplemental claims were provided to QBE as early as

December,[3] and again in January, with no payment issued until May. (Rec. Doc. 25-11 (email from

Accord to RYZE providing the estimate in December); Rec. Doc. 25-10, at 2 (noting that thirty

days had passed without response); *see* Rec. Doc. 22-7 (no check issued for this claim within thirty

days of December 22, 2021); Declaration of Daniel Donohue, at 2 (payment issued in May);

Statement of Material Facts, Rec. Doc. 25-2, at 7). In response, QBE has provided a sworn

declaration of one of its employees stating that no proof of loss was received until mid-February.

(Declaration of Daniel Donohue, at 2). This is a genuine dispute of material fact—when QBE

received proof of loss determines when the statutory timer begins. Accordingly, summary

judgment cannot be granted on timeliness grounds because it is possible that some payments were

issued after the statutory time had run. However, summary judgment could still be granted if QBE

---

[3] While the claims were provided to RYZE, QBE's adjuster, this is sufficient to provide QBE with notice. *Sevier v. U.S. Fid. & Guar. Co.*, 497 So. 2d 1380 (La. 1986) (finding that where the plaintiff's contractor provided an estimate to the defendant's adjuster, satisfactory proof of loss existed); *see also Brunet v. Fullmer*, 777 So. 2d 1240, 1242 (La. App. 4 Cir. 1/10/01) ("When an insurance adjuster assesses an insurance claim for the insurance company, he is acting within the course and scope of the insurance company's business by adjusting such claim. The principles of agency make an insurance adjuster's communication assessing an insurance claim an intra-corporate communication."); *Troyer v. USAA Gen. Indem. Co.*, No. 06-7821, 2007 U.S. Dist. LEXIS 84908, at *1 (E.D. La. June 18, 2007) (noting that "an insurance adjuster is the agent for the insurer").

can show that it did not act arbitrarily, capriciously, or without probable cause as a matter of law in missing the deadline to pay Hebert's claims.

In Louisiana, whether an insurer acted reasonably in failing to pay within the statutory period is a question of fact. *E.g.*, *Craig v. K&K Ins. Grp., Inc.*, 780 So. 2d 1249, 1251 (La. App. 3 Cir. 2/28/01); *Benintende v. First Prot. Life Ins. Co.*, 452 So. 2d 258, 260 (La. App. 5 Cir. 1984). Assuming that the proof of loss was received in December, and assuming that QBE failed to issue payment within the statutory time limits, QBE can only succeed on summary judgment if it acted reasonably as a matter of law—that is, that no reasonable factfinder could find that it acted arbitrarily, capriciously, or without probable cause. As stated above, there must be some substantial, reasonable, or legitimate question as to the extent of the loss for payment not to be issued. The Court declines to find that QBE acted reasonably as a matter of law. The facts suggest that in the weeks immediately following Hurricane Ida, QBE inspected Hebert's house—located in southern Louisiana—and issued a dwelling estimate of $5,685. (Deposition of Nicholas Hebert, at 30:4-21). Ultimately, the dwelling estimates ballooned, including some estimates issued by RYZE significantly exceeding its initial appraisal. (Declaration of Daniel Donohue, at 2). The difference in RYZE's initial and second estimates—from approximately $5,000 to approximately $80,000—is one which could reasonably be considered arbitrary, capricious, or without probable cause (in other words, vexatious) in the eyes of the factfinder. While new damages may have become more readily observable over time, it would not be appropriate for this Court to determine as a matter of law that this difference—or QBE's conduct—was reasonable or unreasonable given the fact-intensive nature of this inquiry. Accordingly, having considered the disparity in estimates and the long history of supplemental claims and eventual payments by QBE, the Court finds that

there exists an issue of fact as to whether QBE acted arbitrarily, capriciously, or without probable cause in failing to issue payments within the statutory time period.

2. *Coverages B and D*

QBE further requests summary judgment as to damages under Coverages B and D, asserting that it has already issued the policy limits under Coverage B and that there are no damages in the form of additional living expenses under Coverage D. Even if his petition for damages was not explicit, Hebert has since made clear through his opposition to the motion for summary judgment, his deposition, and his responses to requests for admission that he is not asserting any cause of action under either Coverage B or Coverage D. Because Hebert is not claiming damages under either of these coverages, QBE's motion is **DISMISSED AS MOOT** as to both of these requests.

3. *Motion for Leave to File Jury Demand*

Hebert has requested leave of the Court to file a jury demand under Federal Rule of Civil Procedure 39(b). Under Rule 39(b), the Court may, when requested by motion, order a jury trial on issues for which a jury might have been demanded under Rule 38. Here, Hebert concedes that he did not timely file a jury demand. This matter has been docketed as a bench trial since its inception. To avoid the appearance of forum shopping, this Court will not grant the request for a jury demand at this juncture. Accordingly, Hebert's motion for leave to file a jury demand is **DENIED**.

Accordingly;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 22)** filed by Defendant, QBE Specialty Insurance Company, is **DENIED** as to the causes of action asserted under La. R.S. §§ 22:1892 and 22:1973.

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 22)** is **DISMISSED AS MOOT** as to the claims regarding Coverages B and D.

**IT IS FURTHER ORDERED** that the **Motion for Leave to File Jury Demand (Rec. Doc. 27)**, filed by Plaintiff, Nicholas Hebert, is **DENIED**.

June 25, 2024

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE